UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
SCOTT GREENBERG,

        Plaintiff,

-against-

CURRAN & CONNORS, INC.,

        Defendant.
-----------------------------------------------------X

Civil Action No.

**CV - 12 3731**

**COMPLAINT**

**SEYBERT, J**

(Jury Trial Demanded)

**BROWN, M. J.**

**SUMMONS ISSUED**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   JUL 27 2012   ★

LONG ISLAND OFFICE

Plaintiff, SCOTT GREENBERG, by and through his attorneys, Bracken Margolin

Besunder LLP, respectfully submit the following complaint.

## PRELIMINARY STATEMENT

1.     This action is brought to enforce the terms of a Stock Purchase Agreement

("Agreement"), a copy of which is attached hereto as Exhibit A, and a related Promissory Note

("Note"), as referenced and attached to the Agreement, a copy of which is attached hereto as

Exhibit B.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332

because there is diversity of citizenship between the Plaintiff and Defendant and because the

amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside

within the Eastern District of New York.

{00136475.3}

### THE PARTIES

4.      Plaintiff, SCOTT GREENBERG ("Greenberg") is an individual residing in the State of Florida.

5.      Defendant, CURRAN & CONNORS, INC. ("C&C"), is a corporation formed under the laws of the State of Delaware.

6.      Defendant, C&C, is engaged in business in New York, *inter alia*, maintaining its principal place of business, its Corporate Headquarters in Hauppauge, New York, in the county of Suffolk.

### AS AND FOR A CAUSE OF ACTION

7.      On or about April 1, 2004, Plaintiff and Defendant executed the Agreement.

8.      On or about April 1, 2004, Defendant executed the Note.

9.      At the time the Agreement and Note were executed by the parties, Greenberg was the President of C&C.

10.     Pursuant to the terms of the Agreement, Greenberg would sell, and C&C would purchase, seventy-five (75%) percent of Greenberg's preferred stock and options.

11.     Pursuant to the terms of the Agreement, at the closing, Greenberg sold to C&C, and C&C bought from Greenberg, five hundred eight and 50/100 (508.50) shares of Greenberg's 8% cumulative preferred stock and one hundred twenty-nine and 75/100 (129.75) of Greenberg's options (referred collectively as "the shares").  See Agreement, Exhibit A, section 1.

12.     The closing date of the Agreement was April 1, 2004.  See Agreement, Exhibit A, section 9.

{00136475.3}                                2

13.    The net purchase price of the shares, as stated in the Agreement, was one million seven hundred forty-seven thousand five hundred one and 99/100 ($1,747,501.99) dollars.  See Agreement, Exhibit A, section 1.

14.    Pursuant to the Agreement, C&C was obligated to pay Greenberg seven thousand five hundred ($7,500.00) dollars of the purchase price on the closing date.  See Agreement, Exhibit A, section 2.1(a).

15.    This sum was in fact paid.

16.    The balance of the purchase price was to be paid pursuant to the terms of the Note, as also recited in the Agreement.  See Agreement, Exhibit A, section 2.1(b).

17.    The Note, in the amount of One Million Seven Hundred Forty Thousand ($1,740,000.00) dollars, is for the balance of the purchase price.  See Note, Exhibit B.

18.    The balance of the purchase price is to bear simple interest at three and one-half (3 ½%) percent per annum.  See Note, Exhibit B.

19.    Pursuant to the Note, C&C is obligated to pay Greenberg "one (1) payment of $76,125.00 consisting of interest only on June 30, 2005, and twenty-three (23) equal consecutive quarterly payments of $83,850.00, each of such payments consisting of principal and interest, commencing September 30, 2005 and continuing quarter-annually thereafter…." See Note, Exhibit B.

20.    Pursuant to the Note,"[t]he entire principal on this Note shall become immediately due and payable (together with interest on the unpaid balance) upon the occurrence of … default in the payment of any quarterly installment which shall not be cured within six (6) months after notice of default given by [Greenberg]." See Note, Exhibit B.

21.     Final payment of principal and interest was due on March 31, 2011, subject to the provisions contained in Sections 6, 7, and 8 of the Agreement. See Note, Exhibit B.

22.     Upon information and belief, no event occurred pursuant to Sections 6 and/or 7 of the Agreement, to either allow C&C additional time to pay the remaining balance of the purchase price, or to cause a cessation of payment as owed by C&C to Greenberg.

23.     Section 8 of the Agreement provides for a modification of the payments in the event of decreased earnings before interest, taxes, depreciation and amortization ("EBITDA"), as defined, falling below five million ($5,000,000.00) dollars in any fiscal period during the term of the Note.  In such an event, for each five hundred thousand ($500,000.00) decrease below that amount, C&C shall "defer the payment of $37,500.00 in equal shares (i.e. $9,375.00 per Note payment) over the next four payments on the Note until deferrals for an annual period reach a maximum of $187,500.00.  Deferred payments shall be added to the end of the Note so as to provide for additional quarterly payments of up to $83,850.00 to [Greenberg] after the sixth year until the deferred payments are paid in full." See Agreement, Exhibit A, at Section 8.

24.     Upon information and belief, C&C timely paid Greenberg $83,850.00 for each quarterly payment due from June 30, 2005 through the final quarter of 2008 (quarterly payments made representing the final quarter of a calendar year were made in January of the following year).

25.     Upon information and belief, the events as described in Section 8 of the Agreement occurred, and C&C deferred a portion of, each quarterly payment due from March 2008 through March 2011.

26.     Upon information and belief, each quarterly payment made from March 2008 through January 2009 was in the amount of $74,475.00 (a deferral of $9,375.00 each), from

March 2009 through January 2010 was in the amount of $46,350.00 (a deferral of $37,500.00 each), and from March 2010 through March 2011 in the amount of $36,975.00 (a deferral of $46,875.00).

27.     Upon information and belief, C&C deferred a total of four hundred twenty one thousand eight hundred seventy five ($421,875.00) dollars due to Greenberg.

28.     As a result, final payment of principal and interest would not be made until September 2012.

29.     C&C paid Greenberg two quarterly installments for the second and third quarter of 2011, each in the amount of $83,850.00.

30.     As a result, upon information and belief, as of the final quarter of 2011, the unpaid balance of the Note was two hundred fifty four thousand one hundred and five ($254,105.00) dollars due from C&C to Greenberg.

31.     C&C did not pay to Greenberg the sum due for the last quarter of 2011.

32.     Defendant was thus in default in the payment of the quarterly installment for the last quarter of 2011.

33.     On January 16, 2012, a demand letter was sent by Greenberg to C&C demanding payment of $83,850.00, a copy of which is attached as Exhibit C ("Demand Letter").

34.     The Demand Letter notified C&C that "[i]n the event you fail to cure your default by paying the sum due within six (6) months from the date hereof, the entire principal balance of the Note shall immediately become due and payable together with interest." See Exhibit C.

35.     The Demand Letter was mailed to C&C's address as listed in the Note.

36.     Upon information and belief, in or about 2007, C&C moved their headquarters to its present location.  The current address for C&C's headquarters is thus different than the address listed in the Note.

37.     Upon information and belief, Greenberg did not receive written notice, pursuant to the terms of the Note, of the change of C&C's address.  <u>See</u> Note, Exhibit B.

38.     On January 26, 2012, a copy of the Demand Letter was hand-delivered to the current address of C&C's headquarters by Greenberg.

39.     Upon information and belief, Deborah Anderson, the Receptionist at C&C, received and accepted the hand-delivered Demand Letter.

40.     Upon information and belief, Deborah Anderson is authorized to receive and accept deliveries on C&C's behalf.

41.     Pursuant to the terms of the Note, "[n]otices given in person shall be deemed given on the date of delivery."  <u>See</u> Note, Exhibit B.

42.     C&C has failed to remit any payment owed within the six month period and is in default of the Note.  The entire principal on the Note is thus immediately due and payable (together with interest on the unpaid balance).

43.     The remaining indebtedness evidenced by the Note is due and owing to Greenberg and has not been assigned, transferred, pledged, or otherwise encumbered.

44.     To date, Greenberg has been paid one million four hundred eighty five thousand eight hundred ninety-five ($1,485,895) dollars by C&C towards the purchase price of the shares pursuant to the terms of the Note.

45.     The balance of the principal immediately due is two hundred fifty four thousand one hundred five ($254,105.00) dollars together with interest from January 26, 2012.

**WHEREFORE**, Greenberg demands the entry of judgment against Curran & Connors, Inc. in the amount of $254,105.00, together with interest, costs and disbursement of this action and for such other and further relief which this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury of all issues and causes of action triable to a jury.

Dated: Islandia, New York
July 27, 2012

BRACKEN MARGOLIN BESUNDER LLP

John P. Bracken (JB9887)
*Attorneys for Plaintiff*
1050 Old Nichols Road, Suite 200
Islandia, New York 11749
(631) 234-8585

{00136475.3}                    7

Exhibit A

## STOCK PURCHASE AGREEMENT

AGREEMENT dated as of the $1st$ day of April, 2004, by and among SCOTT GREENBERG (hereinafter referred to as "Seller"),and CURRAN & CONNORS, INC., a Delaware corporation (hereinafter referred to as the "Corporation").

### W I T N E S S E T H :

WHEREAS, Seller is currently the President of the Corporation and owns six hundred seventy-eight (678) shares of 8% cumulative preferred stock of the Corporation and has options to purchase one hundred seventy-three (173) shares of common stock of the Corporation;

WHEREAS, Seller, the remaining shareholders and the Corporation are bound by a certain Shareholders Agreement dated February 27, 1996 (hereinafter referred to as the "Shareholders Agreement");

WHEREAS, Seller desires to sell and has offered seventy-five (75%) percent of Seller's preferred stock and options for sale to the Corporation and the Corporation is willing to purchase seventy-five (75%) percent of Seller's preferred stock and options upon the following terms and conditions;

WHEREAS, the Corporation and Seller desire to retain the services of Seller in his present capacity pursuant to the

Employment Agreement dated February 27, 1996, as amended previously prior to this Stock Purchase Agreement, as modified herein.

NOW, THEREFORE, in consideration of the mutual agreements herein contained and for other good and valuable consideration, the parties agree as follows:

1.   Sale and Purchase; Purchase Price

At the closing, Seller shall sell and the Corporation shall purchase five hundred eight and 50/100 (508.50) shares of Seller's 8% cumulative preferred stock and one hundred twenty-nine and 75/100 (129.75) of Seller's options (such preferred stock and options being sold hereinafter referred to as "the Shares"). The purchase price of the Shares shall be Two Thousand Nine Hundred Thirty-five and 15/100 ($2,935.15) Dollars per share for a total of One Million Eight Hundred Seventy-three Thousand Three Hundred Fifty-nine and 49/100 ($1,873,359.49) Dollars, less the strike price of the option shares ($970 X 129.75) totaling One Hundred Twenty-five Thousand Eight Hundred Fifty-seven and 50/100 ($125,857.50) Dollars for a total net purchase price of One Million Seven Hundred Forty-seven Thousand Five Hundred One and 99/100 ($1,747,501.99) Dollars. After the sale of the Shares, Seller shall continue to own one hundred sixty-nine and 50/100 (169.5) shares of the Corporation's 8% cumulative preferred stock and forty-three and 25/100 (43.25) options.

2.   Payment of the Purchase Price

2.1  The purchase price shall be paid as follows:

(a) Seven Thousand Five Hundred ($7,500.00)

2

Dollars on the Closing Date;

(b) The balance of the purchase price evidenced by a promissory note of the Corporation (hereinafter referred to as the "Note", in the form annexed hereto as Exhibit 2.1(b)). The Note shall bear simple interest at three and one-half (3 ½%) per annum and shall be payable as follows: One (1) payment of $76,125.00 consisting of interest only on June 30, 2005; and twenty-three (23) equal consecutive quarterly payments of $83,850.00, each of such payments consisting of principal and interest, commencing September 30, 2005 and continuing quarter-annually thereafter with the final payment of principal and interest due on March 31, 2011, subject to provisions to the contrary contained in Sections 6, 7 and 8, hereof. The Corporation, at its sole option, may prepay the Note in whole or in part from time to time.

2.2 In addition to the terms set forth in paragraph 2.1, the Note shall provide that all unpaid principal and accrued and unpaid interest shall, at the option of the holder, become due and payable upon the occurrence of any of the following events: (i) in the event of a "Corporate Transfer" as hereinafter defined and upon the following terms; or (ii) upon the death of Seller. A "Corporate Transfer" shall be deemed to occur in the event one person or a group of related persons not related or affiliated with Henry Morris acquire more than sixty (60%) percent of the voting stock of the Corporation or in the event of a sale of substantially all of the assets of the Corporation to a person or

3

group of related persons not related or affiliated with Henry Morris. In such case, the Seller will have the option of retaining the Note under its terms or receiving the remaining unpaid principal balance of the Note at the closing of the Corporate Transfer in the same ratio of cash and new debt as is received by the other shareholders (if a stock sale) or the Corporation (if an asset sale).

3.    <u>Subordinated Notes and Accrued Dividends on Convertible Preferred Stock</u>.

(a) Seller shall retain his subordinated promissory notes issued by the Corporation on September 21, 2001 in the amount of $347,524.00. The payment of interest and principal (including prepayments, if any) on such notes shall be consistent with all other subordinated promissory note holders of the Corporation.

(b) Seller has accrued but unpaid dividends on the 508.5 shares of his convertible preferred stock being sold totaling One Hundred Twenty-seven Thousand One Hundred Fifty-five ($127,155.00) Dollars. Subsequent to the date of this Agreement, Seller shall not be entitled to have any additional dividends accrue on said stock nor shall interest accrue on said accrued but unpaid dividends. Seller and the Corporation acknowledge that the Corporation has no obligation to pay Seller said accrued and unpaid dividends. However, in the event that on or before June 30, 2011, the Corporation pays to Henry Morris all or a portion of the accrued and unpaid dividends on his convertible preferred stock,

4

then the Corporation shall pay to Seller all or a pro-rated portion of said accrued and unpaid dividends in the same ratio as paid to Henry Morris.

4. <u>Representations of Seller</u>

Seller hereby represents that: (a) he is the record and beneficial owner of the Shares and has full capacity, power, right and authority, and any approval required by law, to make and enter into this Agreement and to sell, assign, transfer and deliver the Shares; (b) he has good and marketable title to the Shares free and clear of any lien, claim, charge, option, security interest, restriction on transfer, encumbrance or other defect in title; (c) there are no options, warrants or other rights to purchase or otherwise acquire the Shares from Seller; (d) he has not taken any action which has resulted or may result in any liability on the part of the Corporation, other than liabilities incurred on behalf of the Corporation in his representative capacity in the ordinary course of the Corporation's business; and (e) his execution and delivery of this Agreement and consummation of the transactions contemplated by this Agreement will not, with the passage of time, the giving of notice or otherwise, result in a violation or breach of, or constitute a default or forfeiture, or give any right to terminate, modify or accelerate or penalize him under any term or provision of any indenture, license, note, guaranty, mortgage, deed of trust, lease, instrument, or any order, judgment, decree, rule, regulation, law, contract, agreement or any other restriction to which he is a party or to which his assets are

5

subject or bound, nor will it result in the creation of any lien or
other charge upon any of his assets.   These representations are
given, subject to Seller's pledge of the Shares to the Corpora-
tion's institutional lender by Pledge Agreement dated September 21,
2001.   These representations shall survive execution and delivery
of this Agreement.

        5.   <u>Representations of the Corporation</u>.

        The   Corporation   represents   and   warrants   that,
subject to any restrictions imposed by its institutional lender or
contained in the Shareholders Agreement, it has the capacity to
execute this Agreement and purchase the Shares, that all corporate
authority has been obtained, and that the Note   issued   by   the
Corporation is valid and enforceable according to its terms.

        6.   <u>Noncompete; Nonsolicitation; Confidentiality</u>.   For
a period ending after the later of (i) two (2) years after the
actual termination of Seller's employment with the Corporation; or
(ii) two (2) years after the scheduled payment in full of the Note
on March 31, 2011 (whether or not prepaid), unless the Corporation
defaults in payment of the Note on or before June 30, 2009 and the
Seller has given notice of such default to the Corporation and the
Corporation has not cured such default within six (6) months of
receipt of such notice, in which case the Seller may then engage in
the   prohibited   activities   described   below;   however,   if   the
Corporation is in compliance with the terms of payment of the Note
on June 30, 2009 and defaults in payment of the Note subsequent to
June 30, 2009 and Seller has given notice of such default to the

6

Corporation and the Corporation has not cured such default within six (6) months of receipt of such notice, then in such case, the activities described below shall continue to be prohibited for two (2) years from the receipt of notice of such default in payment from the Seller, or (iii) two (2) years after the actual payment in full of the Note, the Seller covenants that he shall not without the prior written consent of the Corporation, engage in any business engaged in by the Corporation, directly or indirectly, as an owner, consultant, manager, associate, partner, agent, employee or otherwise, or by means of any corporate or other device anywhere in North America (such geographic area is hereafter referred to as the "Territory"); nor shall the Seller for such period and in the Territory solicit orders, directly or indirectly from any customer of the Corporation, for any products or services similar to those offered by the Corporation, as an employee, owner, consultant, manager, associate, partner, agent or otherwise, or by means of any corporate or other device; nor shall the Seller for such period and in the Territory solicit for employment or employ any employee or vendor (or employee of vendor) of the Corporation on the Closing Date or subsequent thereto.

The Seller further agrees that he will not engage in any activity or make any statement which disparages or brings the Corporation, or its officers, directors, shareholders, employees, affiliated companies, or businesses into disrepute or causes any economic harm to the Corporation.

The Seller further acknowledges that by reason of his

7

affiliation with the Corporation he has had access to confidential information of the Corporation.  The Seller covenants and agrees that he shall not directly or indirectly, use for his own behalf or on behalf of any third party or divulge to any third party any confidential information or trade secrets of the Corporation.  As used herein, confidential information shall consist of all information, knowledge or data in tangible or intangible form including personal files and notes, relating to the Corporation (including without limitation all trade secrets, proprietary and business information, and information relating to inventions, customer and prospective customer lists, prices and trade practices) which is not presently in the public domain, or is not otherwise published or publicly available, unless published or made public through no fault of Seller.

The Seller acknowledges that the restrictions contained in this Section 6 are reasonable and necessary to protect the legitimate interests of the Corporation, do not cause Seller undue hardship, and that any violations of any provision of this Section 6 will result in irreparable injury to the Corporation and that, therefore, the Corporation shall be entitled to preliminary and permanent injunctive relief in any court of competent jurisdiction and to an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which the Corporation may be entitled.  In addition, a breach of the provisions of this Section 6 shall constitute a material breach of

8

this Agreement and shall entitle the Corporation to cease making all future payments on the Note. In the event that any court having jurisdiction shall determine that the foregoing restrictive covenant or other provisions shall be unreasonable or unenforceable in any respect, then such covenant and other provisions shall be deemed limited to the extent that such court deems it reasonable and enforceable, and as so limited shall remain in full force and effect.

7. <u>Continued Employment of Seller</u>. Seller acknowledges that the Corporation's option to extend the term of Seller's continued employment with the Corporation under the terms of the current Employment Agreement through June 30, 2007 is a material element of this Agreement and that the Corporation would not agree to purchase the Shares without Seller so extending his employment with the Corporation, if the Corporation so chooses. In light thereof, the parties agree that Seller's Employment Agreement shall be amended to extend the term thereof, at the Corporation's sole option, to June 30, 2007. In the event that Seller (i) voluntarily terminates his employment prior to June 30, 2007, or (ii) is involuntarily terminated for "Cause" (as defined in the Employment Agreement), then in addition to anything contained in the terms of Seller's Employment Agreement, as amended, the payments of the Note shall be suspended for a period equal to the number of quarter-annual periods (including a partial quarter-annual period) remaining on Seller's Employment Agreement, as amended, and each subsequent payment due under the Note shall be treated as if its

9

due date was extended for such number of quarter-annual periods.

8. <u>Modification of Payments in the event of De-creased EBITDA</u>

Notwithstanding the payment terms contained in Section 2.1(b) hereof and in the Note, in the event that the Corporation's EBITDA ("EBITDA" shall have the same definition as defined on pages 3 and 4 of the Loan Agreement dated September 25, 2001 between the Corporation and The Chase Manhattan Bank) falls below $5,000,000.00 (hereinafter referred to as "Base EBITDA") in any annual fiscal period during the term of the Note, then for each $500,000.00 decrease in EBITDA below Base EBITDA, the Corporation shall defer the payment of $37,500.00 in equal shares (i.e. $9,375.00 per Note payment) over the next four payments on the Note until deferrals for an annual period reach a maximum of $187,500.00. Deferred payments shall be added to the end of the Note so as to provide for additional quarterly payments of up to $83,850.00 to Seller after the sixth year until the deferred payments are paid in full. In any annual period that the Corporation's EBITDA exceeds Base EBITDA subsequent to the Corporation deferring any Note payments pursuant to this section, then for each $500,000.00 increase of EBITDA above Base EBITDA, the Corporation shall pay an additional $37,500.00 of previously deferred payments to Seller in equal shares (i.e. $9,375.00 per Note payment) over the next four quarterly Note payments so long as any deferred Note payments remain unpaid.

10

9.   Closing Date.

The Closing shall occur as of April 1, 2004.

10.  Deliveries at the Closing.

10.1   At the Closing, Seller shall assign and deliver to the Corporation, properly endorsed for transfer, all of his stock certificates representing the Shares, or in the absence of same and with the consent of the Corporation, Seller shall provide the Corporation with such other documentation sufficient to evidence the assignment and transfer of the Shares.

10.2   At the Closing, the Corporation shall deliver to Seller (i) the cash consideration; and (ii) the Note provided for in 2.1(b) hereof, duly executed.

10.3   At the Closing, each of the respective parties hereto shall execute and deliver such other documents, authorizations and instruments which shall be reasonably required of such party to carry out such party's respective obligations created hereunder.

11.  Consent to Terms

Seller and the Corporation do hereby acknowledge that the purchase of the Shares is subject to (i) restrictions contained in the Shareholders Agreement and that this Agreement is conditioned upon the remaining shareholders of the Corporation consenting to the terms hereof; and (ii) restrictions contained in the loan agreement with the Corporation's institutional lender and that this Agreement is conditioned upon said institutional lender consenting to the terms hereof.   The Corporation and Seller shall

11

use all reasonable efforts to obtain the appropriate consents of the remaining shareholders and the institutional lender.

12.   Other Agreements

12.1 Seller agrees that the Corporation may continue to own and maintain the present life insurance (or obtain replacement or additional life insurance) on Seller's life until the later of (i) the date of scheduled completion of payment of the Note (whether or not prepaid) or (ii) the actual date that the Note and any other obligations of the Corporation to Seller are paid in full.   Seller shall have the right to purchase any policy or policies maintained by the Corporation on his life at the end of the period described in the previous sentence by paying to the Corporation an amount equal to the aggregate cash surrender values of said policies, if any, determined on the date of such purchase.

12.2  Each party hereto shall be solely responsible for his or its expenses in connection with the transaction contemplated herein, including but not limited to attorneys' fees.

13.   General Provisions

13.1 This Agreement is being delivered and is intended to be performed in the State of New York, and shall be construed and enforced in accordance with the laws of such State.

13.2 Titles to paragraphs hereof are for information purposes only.

13.3 This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

12

13.4   This Agreement cannot be modified, amended, changed, discharged or terminated except by further written instrument executed by the parties hereto.

13.5   In the event any part of any provision of this Agreement shall be held or found to be unenforceable by any court of competent jurisdiction, such provision or part of a provision shall be severed from the balance of this Agreement and all of this Agreement's remaining terms and conditions shall be binding and enforceable as if the severed provision had not been contained herein.

13.6   Any notice required to be given or provided for under this Agreement shall be made, in writing, signed by or on behalf of the party giving such notice and delivered, in person, by certified mail, return receipt requested, or by Federal Express to the party or parties entitled thereto, at the following addresses (or to such other address or addresses as may be provided for by notice given pursuant to this paragraph):

If to Seller at:

3221 South Ocean Boulevard-708
Highland Beach, FL 33487

If to the Corporation at:

333 Marcus Boulevard
Hauppauge, NY 11788

 with copies to:

Henry Morris
Morris & Carrick
271 Madison Avenue
New York, NY 10016

13

Levy & Pellegrino, LLP
950 Third Avenue
New York, New York  10022
Attention: Theodore J. Metzger, Esq.

Notices given in person shall be deemed given on the date of delivery.  Notices by mail shall be deemed given on the date of actual delivery.  Notice by Federal Express shall be deemed given on the date deposited with Federal Express with adequate billing information.

13.7 This Agreement contains the entire agreement of the parties hereto in respect to the subject matter.

13.8 This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the Seller has signed this Agreement and the Corporation has caused this Agreement to be signed and sealed by its authorized representatives, both as of the day and year first above written.

_____
SCOTT GREENBERG, Seller

CURRAN & CONNORS, INC.

By:_____
Henry Morris, Chairman

Levy & Pellegrino, LLP
950 Third Avenue
New York, New York  10022
Attention: Theodore J. Metzger, Esq.

Notices given in person shall be deemed given on the date of delivery.  Notices by mail shall be deemed given on the date of actual delivery.  Notice by Federal Express shall be deemed given on the date deposited with Federal Express with adequate billing information.

13.7  This Agreement contains the entire agreement of the parties hereto in respect to the subject matter.

13.8 This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.


IN WITNESS WHEREOF, the Seller has signed this Agreement and the Corporation has caused this Agreement to be signed and sealed by its authorized representatives, both as of the day and year first above written.


                                    _____
                                    SCOTT GREENBERG, Seller

                                    CURRAN & CONNORS, INC.


                              By: _____
                                    Henry Morris, Chairman

Exhibit B

THIS NOTE IS SUBJECT TO THE TERMS OF A SUBORDINATION AGREEMENT
ENTERED INTO BY AND AMONG JPMORGAN CHASE BANK, CURRAN & CONNORS,
INC., AND SCOTT GREENBERG, DATED AS OF APRIL 1, 2004

NON-NEGOTIABLE PROMISSORY NOTE

$1,740,000.00                          April 1, 2004
                                       Hauppauge, New York

FOR VALUE RECEIVED, the undersigned CURRAN & CONNORS, INC., a corporation formed under the laws of the State of Delaware ("Maker"), promises to pay to SCOTT GREENBERG ("Payee"), the sum of One Million Seven Hundred Forty Thousand ($1,740,000.00) Dollars, bearing simple interest at three and one-half (3 ½%) percent per annum.

This Note shall be payable in one (1) payment of $76,125.00 consisting of interest only on June 30, 2005, and twenty-three (23) equal consecutive quarterly payments of $83,850.00, each of such payments consisting of principal and interest, commencing September 30, 2005 and continuing quarter-annually thereafter with the final payment of principal and interest due on March 31, 2011. The Maker, at its sole option, may prepay the Note in whole or in part from time to time.

The entire principal on this Note shall become immediately due and payable (together with interest on the unpaid balance) upon the occurrence of any of the following events (hereinafter, "Event of Acceleration"): (i) default in the payment of any quarterly installment which shall not be cured within six (6) months after notice of default given by Payee; (ii) in the event of a "Corporate Transfer" as hereinafter defined and upon the following terms; or

(iii) upon the death of Payee (so long as Payee cooperates with Maker in allowing Maker to maintain the life insurance it holds on the life of Payee). A "Corporate Transfer" shall be deemed to occur in the event one person or a group of related persons not related or affiliated with Henry Morris acquire more than sixty (60%) percent of the voting stock of the Corporation or in the event of a sale of substantially all of the assets of the Corporation to a person or group of related persons not related or affiliated with Henry Morris. In such case, the Payee will have the option of retaining the Note under its terms or receiving the remaining unpaid principal balance of the Note at the closing of the Corporate Transfer in the same ratio of cash and new debt as is received by the other shareholders of Maker (if a stock sale) or Maker (if an asset sale).

This Note evidences consideration for the sale of shares of Maker by the Payee pursuant to a Stock Purchase Agreement dated as of April 1, 2004. In addition to the terms set forth in this Note, the terms of Sections 6, 7 and 8 of the Stock Purchase Agreement affecting the terms and payment of the Note are incorporated into this Note by reference. This Note is non-negotiable and shall be subordinated and subject in right to the prior payment in full of any and all obligations, liabilities and indebtedness of Maker to a financial institutional lender.

Any notice required to be given or provided for under this Note shall be made, in writing, signed by or on behalf of the party giving such notice and delivered, in person, by certified mail, return receipt requested, or by Federal Express to the party or

2

parties entitled thereto, at the following addresses (or to such other address or addresses as may be provided for by notice given pursuant to this paragraph):

>           If to Payee at:
>
>           3221 South Ocean Boulevard-708
>           Highland Beach, FL 33487
>
>           If to Maker at:
>
>           333 Marcus Boulevard
>           Hauppauge, NY 11788
>
>            with copies to:
>
>           Henry Morris
>           Morris & Carrick
>           271 Madison Avenue
>           New York, NY 10016
>
>           Levy & Pellegrino, LLP
>           950 Third Avenue
>           New York, New York  10022
>           Attention: Theodore J. Metzger, Esq.

Notices given in person shall be deemed given on the date of delivery.  Notices by mail shall be deemed given on the date of actual delivery.  Notice by Federal Express shall be deemed given on the date deposited with Federal Express with adequate billing information.

   This Note is being delivered and is intended to be performed in the State of New York, and shall be construed and enforced in accordance with the laws of such State.

                              CURRAN & CONNORS, INC.

COPY —

                              By: _Henry Morris Chairman_
                              Henry Morris, Chairman

Exhibit C

# BRACKEN MARGOLIN BESUNDER LLP

*Attorneys at Law*

JOHN P. BRACKEN
Partner
jbracken@bmblawllp.com

1050 Old Nichols Road
Suite 200
Islandia NY 11749
TEL 631 234 8585
FAX 631 234 8702
www.bmblawllp.com

January 16, 2012

Curran & Connors, Inc.
333 Marcus Boulevard
Hauppauge, NY 11788

     **Re:**  **Promissory Note dated April 1, 2004**
         **Principal Amount: $1,740,000**

Gentlemen:

  We represent Scott Greenberg, the holder of the above referenced Promissory Note. Mr. Greenberg advises that you have failed to make the quarterly payment in the sum of $83,850 that was due and owing on January 2, 2012 (payment deferred from December 27, 2011). Please be advised that by virtue of your nonpayment, you are now in default under the terms of the Note.

  On behalf of our client, demand is hereby made for immediate payment in the amount of $83,850. In the event you fail to cure your default by paying the sum due within six (6) months from the date hereof, the entire principal balance of the Note shall immediately become due and payable together with interest.

         Very truly yours,

         John P. Bracken

JPB:alh

***Federal Express***

cc: Henry Morris
  Morris & Carrick
  271 Madison Avenue
  New York, NY 10016

  Levy & Pellegrino, LLP
  Att: Theodore J. Metzger, Esq.
  950 Third Avenue
  New York, NY 10022

{00122246.1}